*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-351

JANUARY TERM, 2014

| | |
|---|---|
| In re I.B., Juvenile | APPEALED FROM:<br><br>Superior Court, Chittenden Unit,<br>Family Division<br><br>DOCKET NO. 205-7-12 Cnjv<br><br>Trial Judge: Alison S. Arms |

In the above-entitled cause, the Clerk will enter:

Father appeals from a decision of the superior court, family division, that the minor I.B. is a child in need of care and supervision (CHINS). Father contends that the trial court improperly relied on factors beyond his control, specifically mother's drug use and failure to obtain prenatal care. We affirm.

Father has challenged none of the trial court's factual findings, which may be summarized as follows. In early May 2013, mother attended a health care appointment in Burlington, indicated that she was approximately thirty weeks pregnant, and stated that she had not received any prenatal care to that point. When asked to submit urine and blood samples for routine testing, however, mother refused, stated that she need to leave right away, and indicated that she would return the next day. When she failed to return, the nurse midwife informed Fletcher Allen Health Care, which made a report to the Department for Children and Families.

In early July 2013, a DCF case worker contacted mother, who stated that the child had already been born, resulting in the filing of a CHINS petition. In fact, mother did not give birth until a week later, in Plattsburgh, New York. Father stated that they were in New York looking for housing, but the court found that his testimony was not credible, and that their actions suggested that they had traveled to New York to conceal mother's continued illicit drug use.

The family's history with DCF at that point was extensive. Mother's first child, with a different father, was born in 2001. Her second, third and fourth children with appellant father were born in 2007, 2009, and 2011. The first three children were adjudicated CHINS in 2008 and 2009, and the case plan goals called for mother to obtain drug treatment and screening, and for both mother and father to engage with DCF, Easter Seals, and other service providers. When both parents failed to engage with the service providers or to make progress toward the case plan goals, the State filed petitions to terminate their parental rights, which the court granted in August 2011. A fourth child was born in 2011, during the pendency of the TPR proceeding. Shortly thereafter, both parents stipulated to an adjudication of CHINS and voluntarily relinquished their parental rights in May 2012.

The court noted that much of the testimony in this case dealt with mother's addiction to opiates spanning many years and her failed attempts at treatment. However, the court also reviewed the substantial evidence that mother and father had struggled for years to provide adequate housing for their children and expressed "significant doubts as to the parents' ability to obtain and maintain suitable housing for their child." The court also reviewed extensive evidence showing that both parents had consistently failed to effectively engage with service providers or meet case plan goals, that their parenting skills had shown little or no improvement over time, and that their extremely acrimonious relationship with one another and with service providers had interfered with their ability to make progress. Based on these findings, the court concluded that both parents had exhibited a general pattern of neglect and inability to parent their older children, and expressly determined that "the evidence . . . sufficiently ties the pattern of behavior with respect to the parents' older children to the likely future treatment of [I.B.]." In sum, the court concluded that "[b]oth parents have shown a consistent inability to effectively engage with services, and improve their parenting skills," that the evidence did not show any recent change in their circumstances, and that their "history with [I.B.'s] siblings is sufficiently predictive of their likely future behavior regarding [I.B.]" that the State had satisfied its burden of proof that I.B. is CHINS. This appeal by father followed.

Father contends the trial court erred in attributing to him certain factors allegedly beyond his control, specifically mother's drug use and prenatal neglect of the child. Whatever its merits, however, the claim is misplaced, as the trial court here plainly relied on the substantial record evidence relating specifically to father's demonstrated pattern of behavior with respect to I.B.'s four older siblings, a pattern showing an inability to obtain suitable housing or engage in the services necessary to adequately parent the child. We have long held that "[t]he family court may rely on evidence of the treatment of a sibling in concluding that a child is CHINS," E.J.R. v. Young, 162 Vt. 219, 224 (1994), and the trial court specifically found that such reliance was appropriate in this case, where father's pattern of behavior was "predictive" of his "likely future behavior" toward I.B. Father has not specifically challenged this finding nor shown that it was unsupported. Moreover, father is mistaken that mother's drug use and prenatal neglect were factors entirely unrelated to his own behavior; the record showed that he helped to facilitate her trip to New York to give birth, which the court found was designed to avoid disclosure of her drug use while pregnant. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice

2